1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MORIANO MILLARE,                          No. 2: 22-cv-1862 KJN P

12                     Plaintiff,

13         v.                                    ORDER AND FINDINGS AND
                                                 RECOMMENDATIONS
14    CDCR, et al.,

15                     Defendants.

16

17           Plaintiff is a state prisoner proceeding without counsel, with a civil rights action pursuant

18    to 42 U.S.C. § 1983.  On October 19, 2022, defendants removed this action from San Joaquin

19    County Superior Court.[1]  (ECF No. 1.)  On November 7, 2022, defendants filed a request for the

20    court to screen plaintiff's second amended complaint.  (ECF No. 4.)

21    ////

22

23    _____

      [1]  Pursuant to 28 U.S.C. § 1446(b)(3), defendants had thirty days from the date defendants
24    Chavarria, Woods and Reynolds were served with the second amended complaint to remove this
      action.  According to the notice of errata, defendant California Department of Corrections and
25    Rehabilitation ("CDCR") accepted service on behalf of defendants Chavarria, Woods and
      Reynolds on September 13, 2022.  (ECF No. 3.)  Therefore, defendants' notice of removal, filed
26    October 19, 2021, appears untimely.  However, the undersigned does not recommend remand of
      this action to state court because plaintiff did not file a motion to remand or otherwise object to
27    removal.  Hunt v. County of Los Angeles, 2022 WL 3998573, at *1 (9th Cir. Sept. 1, 2022)
      (finding that district court exceeded its authority to remand a case to state court sua sponte based
28    on procedural defect).

Good cause appearing, defendants' request for the court to screen plaintiff's second amended complaint is granted.  28 U.S.C. § 1915A(a).  For the reasons stated herein, the undersigned recommends dismissal of this action.

Background

On October 19, 2020, plaintiff filed a complaint, case no. STK CV LPI 2020 8820, in the San Joaquin County Superior Court naming as defendants Transportation Officers Reynolds, Charvarria and Woods.  (ECF No. 1 at 7-47.)  Plaintiff raised a state law claim for negligence based on the alleged loss of his cervical pillow.  (Id. at 9.)  Apparently, no defendants were served with the complaint.

On November 8, 2021, plaintiff filed a first amended complaint in case no. STK CV LPI 2020 8820, naming the California Department of Corrections and Rehabilitation ("CDCR") as a defendant and thereby voluntarily dismissed defendants Reynolds, Chavarria and Woods.  (Id. at 49-90.)  Plaintiff raised state law claims for negligence, violation of Title 15 of the California Code of Regulations and California Civil Code § 1427 based on the alleged loss of his cervical pillow.  (Id. at 55-57.)

On February 3, 2022, defendant CDCR demurred to the first amended complaint.  (Id. at 92-103.)

On June 14, 2022, the Honorable Barbara A. Krolund held a hearing regarding defendant CDCR's demurrer.  (Id. at 105-08.)  Judge Krolund granted the demurrer with thirty days to file a second amended complaint.  (Id.)

On June 27, 2022, plaintiff filed a second amended complaint naming CDCR and Transportation Officers Reynolds, Chavarria and Woods as defendants.  (Id. at 110-55.)  Plaintiff alleged violations of the Americans with Disabilities Act ("ADA"), the Eighth Amendment and two state law claims based on the alleged loss of his cervical pillow.  (Id.)

On July 27, 2022, defendant CDCR demurred to the second amended complaint.  (Id. at 157-77.)  Defendant CDCR also concurrently filed a request for judicial notice regarding plaintiff's alleged failure to comply with the California Government Claims Act.  (Id. at 178-201.)

1    On August 22, 2022, the San Joaquin County Superior Court issued a summons to

2 defendants Reynolds, Chavarria and Woods for the second amended complaint.  (Id. at 204.)

3    On September 13, 2022, defendant CDCR accepted process on behalf of defendants

4 Chavarria, Woods and Reynolds.  (ECF No. 3 (notice of errata).)  On September 21, 2022,

5 defendant CDCR provided the service documents to defendants Chavarria, Woods and Reynolds.

6 (Id.)

7    On October 19, 2022, defendants filed the notice of removal.  (ECF No. 1).

8 Legal Standard for Screening

9    A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

10 Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

11 Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an

12 indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

13 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

14 pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

15 Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir.

16 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably

17 meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at

18 1227.

19    Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain

20 statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

21 defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic

22 Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

23 In order to survive dismissal for failure to state a claim, a complaint must contain more than "a

24 formulaic recitation of the elements of a cause of action;" it must contain factual allegations

25 sufficient "to raise a right to relief above the speculative level."  Bell Atlantic, 550 U.S. at 555.

26 However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the

27 defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v.

28 Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal

1    quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as

2    true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the

3    pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236

4    (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

5    Plaintiff's Claims in Second Amended Complaint

6          Named as defendants are CDCR and Transportation Officers Reynolds, Chavarria and

7    Woods.  (ECF No. 1 at 111-12.)

8          Plaintiff alleges that he is mobility impaired and suffers from multi-level cervical spine

9    spondylosis, multi-level thoracic spine spondylosis and multi-level lumbar degenerative disease.

10   (Id. at 113.)  Plaintiff alleges that these conditions cause plaintiff to suffer severe pain in his arms,

11   legs, back and head which interferes with his sleep.  (Id.)

12         Prior to 2017, plaintiff was prescribed a durable medical equipment ("DME") cervical

13   pillow to support his neck while laying down.  (Id.)

14         On January 7, 2020, plaintiff transferred from Deuel Vocational Institution ("DVI") to the

15   Correctional Training Facility ("CTF").  (Id.)  Before plaintiff was shackled and assigned a seat

16   on the transportation bus, a female CDCR transportation officer seized plaintiff's DME cervical

17   pillow.  (Id.)

18         On January 9, 2020, plaintiff filed a grievance regarding the confiscation of his DME

19   cervical pillow, grievance no. TUN 20 0008.  (Id. at 114.)

20         On or about January 17, 2020, plaintiff received treatment for increased pain, difficulty

21   sleeping and concentrating associated with multi-level compressions throughout his spine that

22   was exacerbated by the deprivation of his DME cervical pillow.  (Id.)

23         A CDCR physician ordered plaintiff a replacement cervical pillow and physical therapy.

24   (Id.)  On February 10, 2020, plaintiff was provided with a replacement DME cervical pillow.

25   (Id.)

26         On February 12, 2020, Sergeant Hazel interviewed plaintiff regarding his grievance.  (Id.)

27   On March 12, 2020, Officer Seeley ordered plaintiff to withdraw his grievance regarding the

28   confiscation of his cervical pillow.  (Id. at 115.)  Plaintiff declined to withdraw the grievance.

1  (Id.)

2        On April 9, 2020, plaintiff received a first level response to his grievance.  (Id.)  On April

3  20, 2020, plaintiff submitted his grievance for second level review.  (Id.)  Plaintiff contends that

4  pursuant to California Code of Regulations title 15, § 3084.8(c)(2), prison officials had thirty

5  working days to complete the second level response to his grievance from the date it was received

6  by the Appeals Coordinator.  (Id.)  Plaintiff contends that as of June 19, 2020, he had not received

7  a response to his second level grievance.  (Id.)

8        On May 27, 2020, plaintiff submitted a California Government Claim form regarding his

9  grievance.  (Id.)  On June 16, 2020, plaintiff's California Government Claim was rejected.  (Id.)

10        Plaintiff's second amended complaint raises four legal claims.  In claim one, plaintiff

11  alleges that all defendants violated Title II of the Americans with Disabilities Act ("ADA") by

12  unlawfully seizing his DME cervical pillow from January 7, 2020, to February 10, 2020.  (Id. at

13  117.)  In claim two, plaintiff alleges that all defendants violated the Eighth Amendment by

14  unlawfully seizing his DME cervical pillow.  (Id. at 118-19.)  In claim three, plaintiff alleges a

15  state law claim for negligence against all defendants.  (Id. at 119-20.)  In claim four, plaintiff

16  alleges a state law claim for violation of California Civil Code § 1427 against all defendants.  (Id.

17  at 120-21.)

18        As relief, plaintiff seeks money damages and for the court to order defendants to provide

19  plaintiff with a definitive diagnosis relative to his cervical, thoracic and lumbar spine

20  condition/injuries.  (Id. at 122.)

21  ADA Claim

22        *Defendants Reynolds, Chavarria, Woods*

23        At the outset, the undersigned finds that plaintiff's official capacity ADA claims against

24  defendants Reynolds, Chavarria and Woods should be dismissed as redundant.  The second

25  amended complaint asserts that defendant CDCR is named as the defendant entity violating the

26  ADA.  Although a plaintiff may pursue ADA claims against defendants in their official

27  capacities, "[w]hen both a municipal officer and a local government entity are named, and the

28  officer is named only in an official capacity, the court may dismiss the officer as a redundant

defendant." Center for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008).  This reasoning applies equally to state entities and their officers.  Welks v. California Department of Corrections, 2019 WL 4745272, at *5 (E.D. Cal. Sept. 30, 2019) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits... generally represent only another way of pleading an action against an entity of which an officer is an agent." (citation and internal quotation marks omitted)).  Thus, because plaintiff named CDCR as a defendant, plaintiff's official capacity ADA claims against the individual defendants should be dismissed.

*Defendant CDCR*

To show a violation of Title II of the ADA, a plaintiff must show the following:  "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability."  Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001) (citing Weinreich v. Los Angeles County Metropolitan Transp. Authority, 114 F.3d 976, 978 (9th Cir. 1997)).

"The ADA prohibits discrimination because of disability, not inadequate treatment for disability."  Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1022 (9th Cir. 2010), overruled on other grounds by Castro v. Cnty. of Los Angeles, 833 F.3d 1060 (9th Cir. 2016) (en banc). Failing to attend to the medical needs of a disabled person does not violate the ADA.  See Figueira by and through Castillo v. Cty. of Sutter, 2015 WL 6449151, at *9 (E.D. Cal. Oct. 23, 2015).  "The lack of medical treatment or the failure to provide an accommodation for [a plaintiff's] medical condition does not provide a basis upon which to impose liability under the ADA."  Mixon v. Tyson, 2017 WL 5998231, at *5 (E.D. Cal. Dec. 4, 2017) (citing Simmons, 609 F.3d at 1022; Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)).

In Mixon, the plaintiff "suffered a fall, injuring his lower back" while exiting his top bunk.  Mixon, 2017 WL 5998231, at *3.  Plaintiff wrote a 602 administrative grievance requesting a lower bunk, but plaintiff was denied.  See id.  "Plaintiff submitted a medical request form" and was seen by a doctor.  Id.  The doctor refused plaintiff's request.  Id.  Plaintiff fell from

6

his top bunk again and "fractured the bone in his right foot." <u>Id.</u>  Plaintiff sued under the ADA. <u>Id.</u>  The court held that plaintiff's "complaint does not set forth any facts supporting a claim that he was excluded from or discriminated against with regard to services, programs, or activities" by reason of any diagnosed disability.  <u>Id.</u> at *5.  The court reasoned that "[i]nstead, the incidents giving rise to this lawsuit relate to the medical care [p]laintiff was provided."  <u>Id.</u>

In the instant case, plaintiff alleges violation of the ADA based on confiscation of his DME cervical pillow, which caused him to suffer pain and sleep deprivation.  The undersigned finds that the alleged confiscation of plaintiff's DME cervical pillow relates to medical care and is not related to discrimination against plaintiff because of his disability.  "The lack of medical treatment or the failure to provide an accommodation for his medical condition does not provide a basis upon which to impose liability under the ADA."  <u>Mixon</u>, 2017 WL 5998231, at *5; <u>see also</u> <u>McKinnon v. Nikula</u>, 2021 WL 6118742, at *12 (W.D. Wash. Nov. 17, 2021) (denial of request for knee brace, medical mattresses and wedge pillow alleges claim for inadequate medical treatment, which does not constitute discrimination under the ADA).

For the reasons discussed above, the undersigned finds that plaintiff's second amended complaint fails to state a potentially colorable ADA claim against defendant CDCR.

<u>Eighth Amendment Claim</u>

*Defendant CDCR*

Claims for damages against the state, its agencies, or its officers for actions performed in their official capacities are barred under the Eleventh Amendment, unless the state waives its immunity.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985) (Eleventh Amendment bars a damages action against a State in federal court); <u>see also</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989).  Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override...."  <u>Dittman v. California</u>, 191 F.3d 1020, 1025 (9th Cir. 1999); <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984) ("It is clear ... that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed

1  by the Eleventh Amendment.").

2          For the reasons discussed above, the undersigned finds that plaintiff's Eighth Amendment

3  claim against defendant CDCR is barred by the Eleventh Amendment.

4          *Defendants Reynolds, Chavarria, Woods*

5          The Civil Rights Act under which this action was filed provides as follows:

6                  Every person who, under color of [state law] . . . subjects, or causes
                   to be subjected, any citizen of the United States . . . to the deprivation
7                  of any rights, privileges, or immunities secured by the Constitution .
                   . . shall be liable to the party injured in an action at law, suit in equity,
8                  or other proper proceeding for redress.

9  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

10  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

11  Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983

12  liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no

13  affirmative link between the incidents of police misconduct and the adoption of any plan or policy

14  demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another

15  to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative

16  act, participates in another's affirmative acts or omits to perform an act which he is legally

17  required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588

18  F.2d 740, 743 (9th Cir. 1978).

19          Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

20  their employees under a theory of respondeat superior and, therefore, when a named defendant

21  holds a supervisorial position, the causal link between him and the claimed constitutional

22  violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979)

23  (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d

24  438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), cert.

25  denied, 442 U.S. 941 (1979).  Vague and conclusory allegations concerning the involvement of

26  official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673

27  F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal

28  participation is insufficient).

8

1        Plaintiff's second amended complaint contains no allegations linking defendants

2   Reynolds, Chavarria and Woods to the alleged deprivations.  Plaintiff does not allege that

3   defendants Reynolds, Chavarria and/or Woods were involved in the alleged confiscation of

4   plaintiff's DME cervical pillow.  Accordingly, plaintiff's second amended complaint fails to state

5   a potentially colorable Eighth Amendment claim against defendants Reynolds, Chavarria and

6   Woods.

7   <u>Exhaustion of Administrative Remedies</u>

8        "The Prison Litigation Reform Act of 1995 ... mandates that an inmate exhaust 'such

9   administrative remedies as are available' before bringing suit to challenge prison conditions."

10  <u>Ross v. Blake</u>, 578 U.S. 632, 635 (2016) (quoting 42 U.S.C. § 1997e(a)).  Although dismissal of a

11  prisoner civil rights action for failure to exhaust administrative remedies must generally be

12  decided pursuant to a motion for summary judgment, <u>see</u> <u>Albino v. Baca</u>, 747 F.3d 1162 (9th Cir.

13  2014), a court can also dismiss a case at screening "[i]n the rare event that a failure to exhaust is

14  clear on the face of the complaint," <u>id.</u> at 1166.

15       For the following reasons, the undersigned finds that plaintiff's failure to exhaust

16  administrative remedies as to his Eighth Amendment claims against defendants Reynolds,

17  Chavarria and Woods is clear on the face of the second amended complaint.

18       In the second amended complaint, plaintiff alleges that grievance no. TUN 20 00008

19  exhausted administrative remedies regarding the claims raised in this action.  (ECF No. 1 at 114.)

20  Plaintiff attaches a copy of grievance TUN 20 00008 to the second amended complaint.  (<u>Id.</u> at

21  130-35.)

22       In the second amended complaint, plaintiff suggests that his remedies were exhausted

23  after prison officials failed to respond to his second level grievance submitted in TUN 20 00008

24  within thirty working days, as required by the regulations.  <u>Andres v. Marshall</u>, 867 F.3d 1076,

25  1079 (9th Cir. 2017) (when prison officials fail to process an administrative grievance, the

26  prisoner is deemed to have exhausted administrative remedies).

27       For the reasons discussed herein, the undersigned finds that even if prison officials failed

28  to respond to plaintiff's second level grievance submitted in TUN 20 00008 within the time

1    allotted by the regulations, this grievance did not administratively exhaust plaintiff's Eighth

2    Amendment claims against defendants Reynolds, Chavarria and Woods because plaintiff failed to

3    name these defendants in his grievance.

4           "[P]roper exhaustion" under the PLRA requires that a prisoner comply with the prison's

5    "deadlines and other critical procedural rules" as a precondition to bringing suit in federal court.

6    See Woodford v. Ngo, 548 U.S. 81, 90 (2006).  At the time relevant to this action, the regulations

7    provided that the prisoner "shall state all facts known and available to him/her regarding the issue

8    being appealed at the time of submitting the Inmate/Parolee Appeal Form, and if needed, the

9    Inmate Parolee/Appeal Form Attachment."  Cal. Code Regs. tit. 15, § 3084.2(a)(4).[2]  If the

10   inmate does not have information concerning the identity of the person at issue, he or she must

11   provide any other available information that would assist the appeals coordinator in identifying

12   who is at fault.  Cal. Code Regs. tit. 15, § 3084.2(a)(3).

13          In the first level of grievance no. TUN 20 00008, signed by plaintiff on January 9, 2020,

14   plaintiff alleged that a female transportation officer took plaintiff's cervical pillow.  (ECF No. 1 at

15   130-31.)  Plaintiff did not name defendants Reynolds, Chavarria or Woods in grievance TUN 20

16   00008.  (Id.)  The undersigned also observes that plaintiff identifies defendants Reynolds,

17   Chavarria and Woods as men in the second amended complaint.  (Id. at 111-12.)  Therefore, it is

18   clear that defendants are not the female officer described in the grievance.

19          Grievance no. TUN 20 0008 failed to name defendants Reynolds, Chavarria and Woods or

20   otherwise put prison officials on notice that plaintiff was grieving actions taken by these

21   defendants.[3]  For these reasons, the undersigned finds that grievance no. TUN 20 0008 did not

22   exhaust plaintiff's administrative remedies as to defendants Reynolds, Chavarria and Woods.

23   Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) ("A grievance suffices to exhaust a claim if it

24   puts the prison on adequate notice of the problem for which the prisoner seeks redress.  To

25   provide adequate notice, the prisoner need only provide the level of detail required by the prison's

26   ───────────────
     [2]  Effective June 1, 2020, new rules are set out in Cal. Code Regs. tit. 15, § 3480-3486.

27
     [3] The response to plaintiff's first level grievance does not mention defendants Reynolds,
28   Chavarria or Woods.  (ECF No. 1 at 134-35.)

                                                        10

1   regulations.").

2   <u>Conclusion</u>

3          For the reasons discussed above, the undersigned finds that plaintiff cannot cure the

4   pleadings defects as to his ADA claim.  Plaintiff also cannot cure the pleading defects as to his

5   Eighth Amendment claim against defendant CDCR.  Plaintiff may be able to cure the pleading

6   defects as to his Eighth Amendment claim against defendants Reynolds, Chavarria and Woods.

7   However, it is clear from the face of the second amended complaint that plaintiff failed to exhaust

8   administrative remedies as to the Eighth Amendment claim against these defendants.

9          Leave to amend should be "freely given when justice so requires."  Fed. R. Civ. P. 15(a).

10  Nevertheless, a pro se litigant's complaint may be dismissed without leave to amend when it is

11  absolutely clear that no amendment can cure the defect.  <u>Lucas v. Dep't of Corrs.</u>, 66 F.3d 245,

12  248 (9th Cir. 1995).  Because it is clear that no amendment can cure the defects discussed above,

13  the undersigned recommends dismissal of plaintiff's Eighth Amendment and ADA claims.

14         "'[I]n the usual case in which all federal-law claims are eliminated before trial, the

15  balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial

16  economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction

17  over the remaining state-law claims.'"  <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 561 (9th

18  Cir. 2010) (quoting <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n. 7 (1988), superseded

19  on other grounds by statute as recognized in <u>Fent v. Okla. Water Res. Bd.</u>, 235 F.3d 553, 557

20  (10th Cir. 2000)); <u>see</u> <u>also</u> <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966) ("[I]f

21  the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional

22  sense, the state claims should be dismissed as well.").

23         The undersigned recommends that the court decline to exercise supplemental jurisdiction

24  over plaintiff's remaining state law claims based on the recommendation that plaintiff's federal

25  claims be dismissed.  28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental

26  jurisdiction over a claim if the district court has dismissed all claims over which it has original

27  jurisdiction).

28  ////

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Defendants' request for the court to screen plaintiff's second amended complaint (ECF No. 4) is granted;

2.  The Clerk of the Court shall appoint a district judge to this action; and

IT IS HEREBY RECOMMENDED that this action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 30, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Mill1862.14

12